# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO

Civil Action No. 13-cv-2972-NYW

MARGARITA ANDERSON,

    Plaintiff,

v.

CAROLYN W. COLVIN, Acting Commissioner of Social Security Administration,

    Defendant.

## MEMORANDUM OPINION AND ORDER

Magistrate Judge Nina Y. Wang

    This matter comes before the court pursuant to Titles II and XVI of the Social Security Act ("Act"), 42 U.S.C. §§ 401-33 and 1381-83(c), for review of the Commissioner of Social Security's final decision denying Plaintiff Margarita Anderson's application for Disability Insurance Benefits ("DIB"), Supplemental Security Income ("SSI"), and disabled widow's benefits ("DWB"). This civil action was referred to the undersigned Magistrate Judge for a decision on the merits pursuant to 28 U.S.C. § 636(c), the Order of Reference dated January 16, 2015 [#30], and D.C.COLO.LCivR 72.2. The court has carefully considered the Letter from Margarita Anderson filed on November 3, 2014 [#10]; the Response Brief filed by Defendant Carolyn W. Colvin (the "Commissioner") on December 1, 2014 [#25], the Administrative Record that has been filed at [#19, #20],[1] the entire case file, and the applicable case law.

---

[1] *See* [#19-2 through #19-11 and #20] (the "Administrative Record" or "Record"). The Supplemental Administrative Record [#20] includes a copy of the ALJ's second Decision, which the Social Security Administration indicates was "inadvertently omitted from the administrative record in the case of Margarita Anderson, which was certified on August 4, 2014." [*Id.* at 1]. The first ALJ Decision dated September 11, 2012 pertains to her claim for DWB benefits. [#19-

Having been fully advised of the premises, and for the reasons set forth herein, this court respectfully AFFIRMS the decision of the Administrative Law Judge ("ALJ").

## BACKGROUND

Plaintiff Margarita Anderson ("Plaintiff" or "Ms. Anderson") was born in 1955 and prior to filing disability, was employed as a dental technician and in various customer service roles. Plaintiff initially filed for DIB on August 2, 2010 [#19-3 at 58] and SSI benefits on February 22, 2011 [#19-5 at 189]. Ms. Anderson then filed for DWB benefits on May 2, 2012, after the death of her husband on April 13, 2012. [#19-5 at 45-48]. Originally, Ms. Anderson identified the following bases for her claim for disability: depression; post-traumatic stress disorder ("PTSD"), arthritis, depression and anxiety, panic disorder without agoraphobia, high blood pressure/high cholesterol, and a hernia in her esophagus. [#19-3 at 60].[2]   On appeal, she identifies a subset of those impairments as the basis for her disability and her challenge to the decision of no disability by the ALJ: (1) PTSD; (2) paranoid personality disorder; and (3) depression. [#23 at 1].

Plaintiff originally claimed a date of disability onset of June 1, 2008. [#19-3 at 61]. Her medical records from that time period indicate an increased level of anxiety and depression, but she was still working. [#19-8 at 356; #19-6 at 298]. She was originally denied benefits on May 3, 2011, with a finding that "[t]he records do not suggest that you are totally disabled. The

---

2]. The second ALJ Decision pertains to her claims DIB and SSI benefits. [#20]. The analyses included in these two decisions are substantially similar, though the statutory requirements to qualify for DWB differ slightly.  For consistency and ease of reference, this Order utilizes the docket number assigned by the Electronic Court Filing ("ECF") system for its citations to the court file. For the Administrative Record, the court then refers to the page number associated with the Record as cited by the Parties, which is found in the bottom right-hand corner. For documents outside of the Administrative Record, the court refers to the page number assigned in the top header by the ECF system.

[2] Ms. Anderson does not identify any physical limitation as a basis for her DIB, SSI, or DWB benefits.

2

records show that you should be able to do less demanding work." [#19-3 at 70; #19-4 at 102]. The decision also noted that Ms. Anderson was still working at least one day a week. [*Id.* at 61].

On May 26, 2011, through counsel, Plaintiff requested a hearing by an ALJ. Prior to her disability hearing before the ALJ, she amended, through counsel, her disability onset date to April 20, 2009, to coincide with the last day she worked. [#19-6 at 298]. A hearing was held before ALJ Paul Conaway on August 17, 2012. [#19-2 at 30-56]. Ms. Anderson was represented during that hearing. [*Id.*]. During that hearing, she testified that in 2009, she was terminated from employment because she refused to return to work after a co-worker threated to kill her and she felt like all her co-workers were against her. [*Id.* at 40]. She further testified that her co-worker's treatment caused her to be "sick." [*Id.* at 41]. Ms. Anderson explained that "sick" meant that she was getting panic attacks. [*Id.* at 37]. She also testified that she had panic attacks when she was working at Wal-Mart as well. [*Id.* at 39]. Plaintiff describes a panic attack as being unable to breathe and wanting to run out and leave. [*Id.* at 43]. Ms. Anderson testified that these panic attacks could occur one to three times a week. [*Id.*].

She also testified that in April 2012, she began a job for Advantage Sales and Marketing, providing samples of food and drink at Wal-Mart. [*Id.* at 44]. She worked seven or eight weeks, two to three days per week with a hiatus due to her husband's death. [*Id.* at 45-46]. When asked whether she could work more, Ms. Anderson did not cite any anxiety attacks, but noted that she got "really tired" because "we stand there all day." [*Id.* at 46]. When asked how long her panic attacks lasted, Plaintiff did not provide the ALJ a direct response. [*Id.* at 50-51].

A vocational expert, Cindy Burnett, also testified at Ms. Anderson's hearing before the ALJ. The ALJ asked Ms. Burnett to consider a person who had no physical limitations, but who had mental limitations; the person could perform simple tasks with reduced public contact, so

3

that "they're limited to unskilled work with reduced interpersonal contact with the general public." [*Id.* at 55]. The contact with the public was described as "brief incidental contact … but, again, the essence of the job shouldn't require interacting with the public, such as a waitress, telephone solicitation, sales person at a Wal-Mart." [*Id.*]. The vocational expert identified a number of jobs both at the light and medium exertional levels, including housekeeper and laundry worker at the light exertional level and a janitor or hand packager at a medium exertional level. [*Id.* at 56]. Plaintiff's counsel asked whether those jobs could still be performed if two or three times a week, the person had to lay down for about an hour, unscheduled, to deal with panic attacks. [*Id.*]. Ms. Burnett testified that those additional limitations would eliminate all competitive employment. [*Id.*].

The ALJ issued his decisions with regard to the DIB, SSI, and DWB benefits on September 11, 2012. One decision pertains to Plaintiff's claim for DWB [#19-2 at 13-25]. The other pertains to the claims for DIB and SSI benefits. [#20 at 743-759]. Both rely upon the same substantive evidence, and conclude that Ms. Anderson is not disabled. [#19-2 at 13-25; #20 at 743-759]. Specifically, the ALJ found that while Plaintiff met the insured status requirements of the Act for each of the claimed type of benefit, she had not performed any substantial gainful activity since the date of onset in April 2009. He further found that she had severe impairments of major depressive disorder, anxiety disorder with panic attacks, and PTSD. The ALJ concluded that she had the residual functional capacity ("RFC") to perform work at all exertional levels; that she could perform basic mental demands of unskilled work; that she could understand, remember, and carry out simple tasks where she had reduced public contact; and that her contact with the public should be limited to incidental interactions. [#19-2 at 21; #20 at 752]. The ALJ found that Plaintiff's increase of symptoms after the initial denial of her application for

disability was not credible, due to the inconsistency with reports in her prior medical records. [#19-2 at 22; #20 at 752]. The ALJ further noted that no specific functional limitations had been identified by any treating physicians. [#19-2 at 22; #20 at 752]. Considering the Plaintiff's RFC, the ALJ then concluded that there were jobs of significant numbers in the national economy that Plaintiff could perform. [#19-2 at 24-25; #20 at 754].

The Appeals Council denied Ms. Anderson's request for review, making the ALJ's decision final for the purposes of judicial review. *See* 20 C.F.R. § 404.981.

## ANALYSIS

**I.     Standard of Review**

In reviewing the Commissioner's final decision, the court is limited to determining whether the decision adheres to applicable legal standards and is supported by substantial evidence in the record as a whole. *Berna v. Chater*, 101 F.3d 631, 632 (10th Cir. 1996) (citation omitted); *Angel v. Barnhart*, 329 F.3d 1208, 1209 (10th Cir. 2003). The court may not reverse an ALJ simply because the court may have reached a different result based on the record; the question instead is whether there is substantial evidence showing that the ALJ was justified in his decision. *See Ellison v. Sullivan*, 929 F.2d 534, 536 (10th Cir. 1990). "Substantial evidence is more than a mere scintilla and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Flaherty v. Astrue*, 515 F.3d 1067, 1070 (10th Cir. 2007) (internal citation omitted). "Evidence is not substantial if it is overwhelmed by other evidence in the record or constitutes mere conclusion." *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992) (internal citation omitted). The court will not "reweigh the evidence or retry the case," but must "meticulously examine the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has

been met." *Flaherty*, 515 F.3d at 1070 (internal citation omitted). Nevertheless, "if the ALJ failed to apply the correct legal test, there is a ground for reversal apart from a lack of substantial evidence." *Thompson v. Sullivan*, 987 F.2d 1482, 1487 (10th Cir. 1993) (internal citation omitted).

An individual is eligible for DIB benefits under the Act if he is insured, has not attained retirement age, has filed an application for DIB, and is under a disability as defined in the Act. 42 U.S.C. §§ 416(i), 423(a)(1). Supplemental Security Income is available to an individual who is financially eligible, files an application for SSI, and is disabled as defined in the Act. 42 U.S.C. § 1382. An individual is determined to be under a disability only if his "physical or mental impairment or impairments are of such severity that [he] is not only unable to do [his] previous work but cannot, considering [his] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy…." 42 U.S.C. §§ 423(d)(2)(A); 1382c(a)(3)(B). An individual seeking disabled widow's benefit faces additional requirements. A claimant must not only prove that she is disabled, but also that she was married to the insured for at least nine month before the death of the insured; and she must be at least 50 years old with a disability that started not later than seven years after the death of the insured. 20 C.F.R. §§ 404.335(a)(1), (c)(1). The ALJ applies the same five-step sequential analysis for all three types of claimed benefits.

The Commissioner has developed a five-step evaluation process for determining whether a claimant is disabled under the Act. *See Williams v. Bowen*, 844 F.2d 748, 750-52 (10th Cir. 1988) (describing the five steps in detail). "If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary." *Id.* at 750. "Step one requires the agency to determine whether a claimant is 'presently engaged in

substantial gainful activity.'" *Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009) (quoting *Allen v. Barnhart*, 357 F.3d 1140, 1142 (10th Cir. 2004). Step two requires the agency to consider whether a claimant has "a medically severe impairment or impairments." *Allen*, 357 F.3d at 1142. "An impairment is severe under the applicable regulations if it significantly limits a claimant's physical or mental ability to perform basic work activities." *Wall*, 561 F.3d at 1052 (citing 20 C.F.R. § 404.1521). At step three, the ALJ considers whether a claimant's medically severe impairments "meets or equals an impairment listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1." *Vigil v. Colvin*, 805 F.3d 1199, 1203 (10th Cir. 2015)

If the claimant's impairments are not equivalent to a listed impairment, at step four of the evaluation process, the ALJ must determine a claimant's RFC and compare the RFC to the claimant's past relevant work. The RFC is what a claimant is still "functionally capable of doing on a regular and continuing basis, despite his impairments: the claimant's maximum sustained work capability." *Williams*, 844 F.2d at 751. "The claimant bears the burden of proof through step four of the analysis." *Neilson v. Sullivan*, 992 F.2d 1118, 1120 (10th Cir. 1993).

At step five, the burden shifts to the Commissioner to show that a claimant can perform work that exists in the national economy, taking into account the claimant's RFC, age, education, and work experience. *Neilson*, 992 F.2d at 1120.

> A claimant's RFC to do work is what the claimant is still functionally capable of doing on a regular and continuing basis, despite his impairments: the claimant's maximum sustained work capability. The decision maker first determines the type of work, based on physical exertion (strength) requirements, that the claimant has the RFC to perform. In this context, work existing in the economy is classified as sedentary, light, medium, heavy, and very heavy. To determine the claimant's "RFC category," the decision maker assesses a claimant's physical abilities and, consequently, takes into account the claimant's exertional limitations (i.e., limitations in meeting the strength requirements of work) . . . .
>
> If a conclusion of "not disabled" results, this means that a significant number of jobs exist in the national economy for which the claimant is still exertionally

7

> capable of performing. However, . . . [t]he decision maker must then consider all relevant facts to determine whether claimant's work capability is further diminished in terms of jobs contraindicated by nonexertional limitations.
> …
>
> Nonexertional limitations may include or stem from sensory impairments; epilepsy; mental impairments, such as the inability to understand, to carry out and remember instructions, and to respond appropriately in a work setting; postural and manipulative disabilities; psychiatric disorders; chronic alcoholism; drug dependence; dizziness; and pain….

*Williams*, 844 F.2d at 751-52. If the ALJ finds that there is alternative work that exists in significant numbers in the local and national economies, then the claimant is determined to be not disabled and is not eligible for disability benefits. *See Klein v. Colvin*, 25 F.Supp.3d 1338, 1341 n.2 (D. Colo. 2014). The ALJ may rely upon the testimony of a vocational expert to satisfy his burden at step five, so long as the question posed to the vocational expert accurately portrays Plaintiff's limitations as supported by the record. *See Qualls v. Apfel*, 206 F.3d 1368, 1373 (10th Cir. 2000); *Trimiar v. Sullivan*, 966 F.2d 1326, 1329 (10th Cir. 1992).

## II.     Application

Ms. Anderson has requested that her correspondence dated November 3, 2014 be considered as an appeal brief. [#23]. Because Ms. Anderson is proceeding *pro se*, this court construes her papers liberally. *See Hall v. Bellmon,* 935 F.2d 1106, 1110 (10th Cir.1991). However, even under a liberal standard with respect to the technical formalities, a plaintiff must still satisfy the requirements of the substantive law. *See McNeil v. U.S.*, 508 U.S. 106, 113, 113 S.Ct. 1980, 124 L.Ed.2d 21 (1993); *Ogden v. San Juan Cnty.*, 32 F.3d 452, 455 (10th Cir.1994). Plaintiff's letter does not identify a specific error in the ALJ's decisions, but rather indicates that "[she] was not appropriately heard at [the ALJ] hearing and am pursuing the case further." [#23 at 1]. In construing this assertion liberally, this court interprets (as did the Commissioner) Ms.

Anderson's contention of error to be that the ALJ's decision was not supported by substantial evidence.

As discussed above, judicial review of the ALJ's determination that a claimant is not disabled is limited to determining whether the ALJ applied the correct legal standard and whether his decisions with respect to Plaintiff's claims for DIB, SSI, and DWB benefits are supported by substantial evidence. *See Watkins v. Barnhart*, 350 F.3d 1297, 1299 (10th Cir. 2003). It is not for this court to reweigh evidence or substitute its judgment for the ALJ's determination. Having reviewed the ALJ's determinations and the medical records associated with Ms. Anderson's disability claims, this court finds that the ALJ's assessments are supported by substantial evidence.

First, the ALJ found, and Ms. Anderson does not dispute, that her limitations do not include limitations on her physical exertion, but only on her state of mental health. [#23]. The ALJ appropriately determined that none of Ms. Anderson's health care providers noted any functional limitations due to her mental health prior to her denial of disability benefits on May 3, 2011. [#19-2 at 21-22; #20 at 751-52]. For instance, on February 5, 2009, two months prior to her alleged disability onset date, one of Plaintiff's treating therapists, Dr. Dawn O'Neil, noted that Ms. Anderson "reported she feels more comfortable with her job and she has continued to function effectively at work." [#19-10 at 657]. The ALJ noted, and the medical records indicate, that Plaintiff's Global Assessment of Functioning ("GAF") score[3] was measured at 71, reflecting

---

[3] The GAF is a scale that assigns a score to reflect an individual's psychological, social, and occupational functioning. The scale is from 0 to 100, with a higher score indicating a higher level of functioning. A GAF score of 71 indicates that "[i]f symptoms are present, they are transient and expectable reactions to psychosocial stressors (e.g., difficulty concentrating after family argument); and there is no more than slight impairment in social, occupational, or school functioning (e.g., temporarily falling behind in school work)". Am. Psychiatric Ass'n Diagnostic and Statistical Manual of Mental Disorders (DSM-IV-TR) at 34 (4th ed. Text Revision 2000). A

improvement from a prior score of 66 on December 9, 2008. [#19-2 at 22; #20 at 751; #19-10 at 658, 673]. The lowest GAF score that this court observed was 62 [#19-11 at 709], which is still within the range "mild symptoms." The ALJ further noted that Ms. Anderson's treatment records at Aurora Mental Health contain numerous references to her seeking employment, reflecting a belief that "claimant was capable of working." [#19-2 at 22; #20 at 751]. This court's review of the records of Aurora Mental Health confirms that conclusion. For instance, in March 2011, just prior to her denial of disability benefits, Ms. Anderson was participating in vocational training. [#19-11 at 706]. In a progress note dated March 14, 2011, Dr. Cynthia Wang noted that Plaintiff "acknowledges that she is doing better now than several years ago before starting [treatment]." [*Id.* at 708]. On April 18, 2011, it is noted that Plaintiff's participation in group vocational counseling is "active and attentive." [*Id.* at 720]. On May 2, 2011, her participation in the "custodial services group," which is set up to develop vocational skills related to janitorial or custodial services, was noted to be "active and attentive." [*Id.* at 725-26]. Even in the progress note from May 9, 2011, there is no indication that Ms. Anderson's treating mental health providers believed she could not work. Rather, she was taken on a field trip, where she was noted as having "great questions as to SSI/SSDI and how they work together with the county." [*Id.* at 729].

The ALJ acknowledged that "there is no question the claimant experienced depression and anxiety around the time of her original alleged onset of disability" and had "extensive treatment since June 2008." [#19-2 at 22; #20 at 751]. However, the ALJ found that her report

---

GAF score of 66 indicates "[s]ome mild symptoms (e.g. depressed mood and mild insomnia) OR some difficulty in social, occupational, or school functioning (e.g., occasional truancy, or theft within the household), but generally functioning pretty well, has some meaningful interpersonal relationships." *Id.* The current Diagnostic and Statistical Manual of Mental Disorders (DSM-V) does not use GAF. Am. Psychiatric Ass'n Diagnostic and Statistical Manual of Mental Disorders (DSM-V) at 16 (5th ed. 2013).

of significant increases of symptoms after the initial denial of disability on May 3, 2011 was not credible, due to its inconsistency with prior medical records. [#19-2 at 22; #20 at 751]. Credibility determinations are within the province of the finder of fact, and the ALJ's determination of credibility is entitled to substantial deference so long as it is linked to substantial evidence in the record. *See White v. Barnhart,* 287 F.3d 903, 909-10 (10th Cir.2001) *(citing Kepler v. Chater,* 68 F.3d 387, 390–91 (10th Cir.1995)); *Marr v. Colvin*, 67 F.Supp.3d 1267, 1270 (D. Colo. 2014). This court finds that there is no error in the ALJ's credibility assessment.

The ALJ noted, and this court agrees, that the severity of symptoms reported by Plaintiff dramatically increased after the initial denial of disability benefits. On May 26, 2011, Ms. Anderson reported that she was having daily panic attacks, resulting from a 2005 rape. [#19-11 at 735]. Nevertheless, her GAF score was measured at 65, which was a slight improvement from her prior score of 62. [*Id.* at 736]. On June 7, 2011, Plaintiff reported to her therapist, Kathryn Holton, that she was completely unable to function. [#19-11 at 701]. Her GAF score at that time was assessed at 50, which was lower than at any time prior to the disability determination. [*Id.* at 700]. By March 29, 2012, the progress notes from Dr. Elena Zerpa indicate that Plaintiff was able to "control her anxiety." [*Id.* at 682]. Indeed, the DDS psychologist, Dr. Berkowitz, finds that Plaintiff is only "partially credible," due to the fact that her statements are not fully supported by her medical records. [#19-3 at 66]. Dr. Berkowitz, to whom the ALJ gives the most weight, concluded that Ms. Anderson was not significantly limited in carrying out simple instructions [*id.* at 67], or appropriately interacting with co-workers [*id.*], or maintaining appropriate social interactions. [*Id.*]. Dr. Berkowitz concluded that Plaintiff could persist at simple tasks with reduced public interaction. [*Id.* at 68]. This conclusion is consistent with

Plaintiff's participation in the custodial working group, and it was incorporated into the ALJ's determination of RFC and present in the question he posed to the vocational expert at step five.

Like the ALJ, this court is sympathetic to the trauma and challenges that Plaintiff has faced. However, this sympathy cannot override the factual record. Having reviewed the entirety of the Administrative Record and the ALJ's decisions, this court concludes that the ALJ's factual findings are detailed and supported by substantial evidence. This court further finds that there are no clear errors of law.

## CONCLUSION

For the foregoing reasons, the decisions by the Administrative Law Judge in this matter as to Plaintiff Margarita Anderson's claim for disability income, Supplemental Social Security and Disabled Widow's Benefit are AFFIRMED. The Clerk of the Court shall enter Judgment in favor of Defendant Carolyn Colvin, in her capacity as Commissioner of the Social Security Administration, against Plaintiff Margarita Anderson, each party to bear her own fees and costs.

DATED:  March 2, 2016                                BY THE COURT:

                                                     s/ Nina Y. Wang
                                                     United States Magistrate Judge